UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OMEGA NATCHIQ, INC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-448 |
| | § | |
| ATP INFRASTRUCTURE PARTNERS, | § | |
| L.P., | § | |
| | § | |
| Defendant. | § | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant, ATP Infrastructure Partners, L.P.'s (Infrastructure's) "Motion to Dismiss Plaintiff's Second Amended Complaint" (D.E. 13), arguing that Plaintiff, Omega Natchiq, Inc.'s (Omega's) Complaint should be dismissed because: (1) this is the third case that Omega has filed against Infrastructure regarding the same issues and the Court should apply the first-to-file rule; (2) the Complaint violates the rule against claim-splitting; (3) the first two counts do not state a claim and should be dismissed under Federal Rule of Civil Procedure 12(b)(6); and (4) Omega lacks standing to seek damages under count two, thus defeating jurisdiction and requiring dismissal under Federal Rule of Civil Procedure 12(b)(1). For the reasons set out below, the motion is GRANTED and this action is DISMISSED.

## FACTS AND PROCEDURAL HISTORY

The circumstances under which Omega filed this case, while viewed differently by the opposing parties, are not in material dispute. Omega provided construction-related materials to ATP Oil & Gas Corporation (ATP) in connection with the exploration and

development of minerals off the coast of Louisiana beginning on or about February 2008. ATP's drilling was conducted from a floating platform unit called the ATP Innovator (Platform), which was affixed to the sea bed.  At the onset of the relationship between Omega and ATP, ATP owned the Platform.  In March 2009, ATP sold the Platform to Infrastructure (a related business entity in which it allegedly holds a direct or indirect controlling ownership interest).  Another entity in the ATP corporate family ostensibly retained a mortgage interest in the Platform, and ATP continued to use it under a Platform Use Agreement.  Omega continued to supply ATP's operations on the Platform after that sale and after ATP's bankruptcy filing, until June 2013.

**Debt, Lien, and ATP Bankruptcy**.  ATP eventually failed to pay for some of Omega's construction materials and services, leaving a balance owed of between $1.3 and $2.2 million.  On August 15, 2012, Omega filed a Statement of Privilege in the records of Plaquemines Parish, Louisiana, amended at least three times, claiming a privilege and entitlement to a lien for its claim on the Platform under the Louisiana Oil Well Lien Act, La. R.S. 9:4861 et seq. (LOWLA).

On or about August 17, 2012, ATP filed for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  The Bankruptcy Court granted Omega an allowed administrative claim in the amount of nearly $650,000 for goods and services provided for ATP's debtor-in-possession operations after the date of the bankruptcy filing.  The record does not reflect whether the Bankruptcy Court has allowed a claim for Omega's pre-petition sales to ATP.  Of course, both types of claims are subject to payment on a pro-rata basis, depending upon the assets

of the bankrupt estate.  Until the bankruptcy case is finalized, Omega does not know how much of its claim, if any, will remain.

**Louisiana Case**.  Within a year of filing its Statement of Privilege, on July 3, 2013, Omega filed its first case against Infrastructure in the United States District Court for the Eastern District of Louisiana (Louisiana Case).  This action is required by LOWLA § 9:4865(B) in order to preserve the privilege against third persons.  Omega sued Infrastructure, as the current owner of the Platform, to impose and enforce its LOWLA privilege and lien to secure ATP's debt.  After significant discovery, the parties filed cross-motions for summary judgment.  Infrastructure challenged whether Omega had taken the necessary steps to create a lien and had properly perfected it against third parties, including Infrastructure.  Omega's motion argued that ATP's corporate relationship with Infrastructure is such that any lien it seeks that would be valid against ATP is also valid against Infrastructure.

On July 9, 2014, the judge in the Louisiana Case issued an order dismissing the motions without prejudice, staying its proceedings, and administratively closing the case. The reason for this was that Omega's claim against Infrastructure could not be liquidated until ATP's bankruptcy case was concluded and Omega had received all payment to which it would be entitled through bankruptcy distributions.  Omega then sought to reopen the Louisiana Case to amend its claim to add a request for injunctive relief to prevent the sale of the Platform without satisfaction of its lien—to maintain the status quo.  That request was denied.

**Adversary Proceeding**.  After continuing its debtor-in-possession operations for nearly a year, ATP obtained an order on June 14, 2013, permitting it to abandon both its lease for offshore drilling and the Platform Use Agreement.  On August 29, 2013, the U.S. Department of the Interior ordered that the Platform be decommissioned.  It was then moved to a shipyard near Aransas Pass, Texas.  Infrastructure seeks to sell the Platform and Omega is concerned that it will lose its privilege and lien if the Platform is sold to a party with no knowledge of the lien proceedings.

With the Louisiana Case stalled in deference to the conclusion of the bankruptcy case, on September 23, 2014, Omega filed its complaint (Adversary Proceeding) against Infrastructure within the ATP bankruptcy case, suggesting that ATP retains an interest in the Platform or Infrastructure, making the case "related to" the ATP bankruptcy.  D.E. 13-4.  It asserts the same general issues as were asserted in the Louisiana Case regarding the establishment of a LOWLA lien, but notes Omega's concern that Infrastructure will sell the Platform.  Omega asks that the Bankruptcy Court seize the Platform and order that it be sold, with proceeds distributed first to Omega and then to other claimants.

Omega then filed a motion in the Louisiana Case to reopen and transfer that matter to the Bankruptcy Court to be adjudicated along with the Adversary Proceeding.  The Louisiana judge denied the motion and admonished Omega that no additional motions to reopen the case were to be filed prior to the final conclusion of the ATP Bankruptcy case on pain of "significant consequences."  D.E. 13-3.  In the meantime, Infrastructure has challenged the Bankruptcy Court's subject matter jurisdiction over the Adversary Proceeding.

**This Case**.  On October 9, 2014, Omega filed suit against Infrastructure in the Judicial District Court of San Patricio County, Texas.  D.E. 1-3.  As amended, the Complaint seeks:  declaratory relief that Omega's LOWLA lien is valid and is recognized in Texas; damages against Infrastructure for all sums secured by Omega's LOWLA lien; and any other relief to which it may be entitled.  D.E. 12.  Infrastructure timely removed the case to this Court on November 7, 2014, on the basis of diversity jurisdiction.  D.E. 1.

Thus there are three lawsuits now pending between Omega and Infrastructure.  In each, Omega seeks establishment, confirmation, and/or recognition of its LOWLA privilege and lien against the Platform.  Otherwise, the lawsuits differ in the relief requested.  In the Louisiana Case, Omega merely seeks to impose the lien.  In the Adversary Proceeding, Omega also seeks seizure and sale of the Platform in payment of ATP's debts that are allegedly secured by the lien.  In this case, Omega does not seek seizure and sale of the Platform but rather seeks a judgment directly against Infrastructure for the amount of ATP's debts.

## THE FIRST-TO-FILE RULE

The Fifth Circuit has spelled out the contours of the first-to-file rule:

> Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap.  The rule rests on principles of comity and sound judicial administration.  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."

*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted).  Application of the rule is a discretionary matter.  *Id.*

Clearly, the issues raised by these three cases between the same two parties substantially overlap in that they all depend on whether the LOWLA lien was properly established and perfected against third parties and whether Omega may now collect ATP's debt against Infrastructure or the Platform.  Omega's only argument for treating this case as anything new and different is that the Platform was brought into this Court's geographical jurisdiction during the pendency of the Louisiana Case.  Yet Omega offers no argument or authority supporting its suggestion that the locus of the Platform creates a new cause of action.

Omega continues to rely on Louisiana law, and particularly LOWLA, to establish its alleged privilege and lien based on the same facts and the same Statement of Privilege.  Omega's idea that there may be a question as to whether a court in Texas will "recognize" the Louisiana privilege and lien is not grounded in any statement of Texas law.  Under LOWLA,

> The privilege shall . . . cease to have effect against third persons who are not parties to the action instituted pursuant to the provisions of Subsection B of this Section unless the claimant files a notice of pendency of action in the mortgage records of the parish where the property is located or lawfully seizes the property subject to the privilege within thirty days after institution of the action unless the property subject to the privilege is a drilling or other rig.

LOWLA § 9:4865(C).  Omega has not provided to this Court any reason that it would not be able to preserve its rights under LOWLA by filing a lis pendens notice in the mortgage records of any parish—or Texas county—to which the Platform is moved.

Such a recording instrument is generally permitted under Chapter 12 of the Texas Property Code and is not limited to lawsuits pending in a Texas court.  Omega has not demonstrated that it attempted to file a lis pendens or any other recording instrument or that such a filing was rejected for any reason by the Texas County Clerk.  At any rate, whether Omega needs a court order to enforce any Texas law to provide notice of its Louisiana Case to potential Platform buyers is an issue not raised in its Complaint in this Court and this Court offers no opinion as to its jurisdiction to entertain such a claim.

Every basis for discretionary dismissal under the first-to-file rule is clearly present in this case.  In addition to involving the same issues between the same parties and wasteful duplication of effort, proceeding with this case would countermand the Louisiana order by which that judge sought to prevent the parties and the court from dissipating resources, pending ATP bankruptcy distributions that could significantly reduce or eliminate Omega's claim against Infrastructure.  The Louisiana court has taken jurisdiction over the issue of establishing whether Omega is entitled to a LOWLA lien and the pendency of this case unnecessarily threatens the effective exercise of that jurisdiction.  To continue would, at best, involve nothing better than the piecemeal resolution of issues that call for a uniform result by having different judges grant or deny different and conflicting or overlapping remedies for the same claim.

**CONCLUSION**

For the reasons set out above, and without reaching the remaining issues, the motion is GRANTED.  This action is DISMISSED without prejudice.

ORDERED this 27th day of April, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE